# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL DWAYNE CAETANO,<br><br>Plaintiff,<br><br>v.<br><br>INTERNAL REVENUE SERVICE, et al.,<br><br>Defendants. | Case No. 1:22-cv-00837-JLT-SAB<br><br>ORDER SCREENING COMPLAINT<br><br>(ECF No. 1)<br><br>**DEADLINE: SEPTEMBER 26, 2022** |

Plaintiff Nathaniel Dwayne Caetano ("Plaintiff"), a state prisoner proceeding *pro se* and *in forma pauperis*, brings this action against Defendants Internal Revenue Service ("IRS"), General Service Administration ("GSA"), the Securities and Exchange Commission ("SEC"), the United States Department of Justice ("DOJ"), the United States Department of the Treasury ("DOT"), the California Department of Financial Protection and Innovation ("DFPI"), the California Secretary of State ("SOS"), and the County of Kings ("Kings County") (collectively, "Defendants"). (ECF No. 1.) The complaint is now before this Court for screening.

///

///

# I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal (Iqbal), 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly (Twombly), 550 U.S. 544, 555 (2007)). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams (Jones), 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678–79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

As a general rule, the Court must limit its review to the operative complaint and may not consider facts presented in extrinsic evidence. See Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001). Materials submitted as part of the complaint, however, are not "outside" the complaint and may be considered. Id.; Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Moreover, the Court is not required to accept as true conclusory allegations which are contradicted by exhibits to the complaint. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001); Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295–96 (9th Cir. 1998). A plaintiff can also "plead himself out of a claim by including unnecessary details contrary to his claims." Sprewell, 266 F.3d at 988. Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. Cato v. U.S., 70 F.3d 1103, 1106 (9th Cir. 1995).

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the first amended complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff contends this action arises from various violations of rights implicated by the Freedom of Information Act, the United Nations Convention on International Trade Law, the Fourth Amendment right to be secure in papers and effects, the due process clause under the fifth and fourteenth amendments, the full faith and credit clause and the First Amendment right to petition the government for redress of grievances, his civil right to vote, and the foreign judgments act/sovereign immunities act. (ECF No. 1 at 5.) However, Plaintiff's allegations, to the extent the Court can ascertain them, appear to pertain only to the Freedom of Information Act ("FOIA"). Indeed, under the "statement of claim" section of the complaint, Plaintiff only appears to reference the FOIA, and within the body of the complaint, Plaintiff refers to his complaint as an "FOIA complaint." (See generally id.; see also id. at 15.)

Plaintiff alleges he wrote up his own "Form FOIA request," which he "twe[a]ked and modified to the specific 'Agency' that [he] was filing the FOIA requests with," and sent his FOIA

requests to each of the eight named Defendants on April 3, 2022. (Id. at 6, 9.) It is not entirely clear what information Plaintiff seeks, but it appears he has requested his complete "Individual Master File," "Business Master File," "decoding book[s]," and "various Forms and publications." (Id. at 10.) He also appears to seek some (unspecified) information relating to a registered security/bond/mutual fund, which Plaintiff alleges is "My property" and carries an asset value of $43,700,000.00.[1] (Id. at 10.) Plaintiff appears to allege he seeks this information for several reasons, including the "pursui[t of] knowledge of the Truth" (id. at 8), a desire to engage in political action and be "successful" (id. at 9), to "obtain point specific information and even general research informational gathers" (id.), in order to "really begin [his] political career" (id. at 7), because it is his "Divine Destiny" (id. at 9), and because he is "the only 35 true President of the United States of America, being Incarnated [illegible] CREATOR" (id. at 14).

After waiting fifteen days and receiving no responses to his original FOIA requests, Plaintiff submitted a second request, which he contends "qualifies as 'appealing.' " (Id. at 6, 9.) Concurrently with the second requests, Plaintiff submitted copies of his inmate trust account statements to establish indigency and sought fee waivers.[2] (Id. at 6, 9.) He alleges he still received no responses. (Id. at 6.)

Contrary to these general allegations, however, Plaintiff also alleges he received responses from the state agency Defendants (DFPI, SOS, and Kings County), in which they rejected Plaintiff's FOIA requests on the basis that the FOIA is inapplicable to state agencies. (Id. at 12.) The state agency Defendants informed Plaintiff he must make a request under California's Public Records Act ("CPRA") and refused to waive Plaintiff's fees. (Id.) Plaintiff claims the state agency Defendants' rejections and denial of fee waivers were improper and discriminatory against Plaintiff on the basis of his indigent status. (Id. at 12–13.) Plaintiff also appears to assert claims against the state agency Defendants arising out of a sovereign citizen ideology. (See, e.g.,

---

[1] However, the latter request appears to be the subject of a separate lawsuit, No. 22-cv-00679-JLT-SKO, in which findings and recommendations to dismiss the action as frivolous are currently pending, id. at ECF No. 11 (E.D. Cal. Aug. 2, 2022).

[2] The Court notes this allegations is contradicted by the face of some of Plaintiff's attached exhibits, the purported "copies" of his FOIA requests, in which Plaintiff indicates he intends to provide his trust account statement at a future date. (See ECF No. 1 at 20, 33.)

4

id. at 12–15.)

With respect to Defendant GSA, Plaintiff attaches a separate "motion-complaint," which he indicates he has included in the instant action for convenience purposes rather than filing as a separate civil litigation. (Id. at 13–14.) It also appears to assert an FOIA claim, relating to Plaintiff's purported registered security/bond/mutual fund valued at $43,700,000.00. (See id. at 13–14, 16–18.)

Plaintiff also attaches re-written "copies," which are written on prison grievance forms, in which he "summarized" two of the FOIA requests included in each of the "appeals" he sent to Defendants, as exhibits to the complaint. (Id. at 10; Ex. A1, ECF No. 1 at 20–22 ("summarized" excerpt of FOIA request to Kings County Superior Court); Ex. C1-2, ECF No. 1 at 25–27 ("summarized" excerpt of FOIA request to IRS); Ex. D1-2, ECF No. 1 at 28–30 ("summarized" excerpt of FOIA request to GSA); Ex. E1-3, ECF No. 1 at 31–34 ("summarized" excerpt of FOIA request to SEC); Ex. F1-2, ECF No. 1 at 35–37 ("summarized" excerpt of FOIA request to DOJ); Ex. G1-2, ECF No. 1 at 38–40 ("summarized" excerpt of FOIA request to DOT); Ex. H1-2, ECF No. 1 at 41–43 ("summarized" excerpt of FOIA request to DFPI).) Because Plaintiff has attempted to fit multiple lines of text in very small handwritten-font into each line of the prison grievance forms, sometimes including scribbling and line-throughs, and the creation of multiple columns of text, many areas of the requests appear illegible.

Plaintiff seeks a jury trial (ECF No. 1 at 6, 15), monetary damages in the amount of $3,000 per Defendant (id.) or at least $1,000 "per request" denied by each Defendant (see generally id. at 20–43), court costs and attorney fees (id. at 6, 15), and injunctive relief (id. at 15–16).

### III.

### DISCUSSION

#### A.     Federal Rule of Civil Procedure 8

As noted, Federal Rule of Civil Procedure ("Rule") 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See Iqbal, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give

the defendant fair notice of what the claim . . . is and the grounds upon which it rests." Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

Rule 8 requires "each averment of a pleading to be 'simple, concise, and direct.'" See McHenry v. Renne, 84 F.3d 1172, 1177–79 (9th Cir. 1996) (affirming dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant").  To comply with Rule 8, a complaint should clearly and fully set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." Id. at 1178.  Further, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." Fed. R. Civ. P. 10(b); see also Hendrix v. Health & Soc. Servs. of Solano Cnty., No. 2:15-cv-02689-MCE-EFB PS, 2017 WL 4004168, at *5 (E.D. Cal. Sept. 12, 2017) (requiring "clear headings to delineate each claim alleged and against which defendant"), report and recommendation adopted, 2017 WL 4340166 (E.D. Cal. Sept. 29, 2017).

"Shotgun pleading occurs when one party pleads that multiple parties did an act, without identifying which party did what specifically; or when one party pleads multiple claims, and does not identify which specific facts are allocated to which claim." Hughey v. Camacho, No. 13-2665, 2014 WL 5473184, at *4 (E.D. Cal. Oct. 23, 2014); see also Harrell v. Hornbrook Cmty. Serv. Dist., No. 2:14-cv-01595-KJM-GGH, 2015 WL 5329779, at *10 (E.D. Cal. Sept. 10, 2015). Thus, if the factual elements of a cause of action are present but are scattered throughout the complaint and not organized into a "short and plain statement of the claim," dismissal for failure to satisfy Rule 8 is proper. McHenry, 84 F.3d at 1178.  Further, "[t]he propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." Id. at 1179.  Indeed, Rule 8(d)'s requirement that each averment of a pleading be "'simple, concise, and direct,' applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)." Id.

The instant complaint is anything but simple, concise, and direct.  The complaint consists

of forty-three pages of less than single-spaced, handwritten text, containing line-throughs, strike-outs, and sometimes makeshift columns of text, many portions of which are illegible. The content of the complaint itself is rife with unintelligible purported statements of law that appear to be based on a sovereign citizen ideology. (See generally, e.g., ECF No. 1 at 12–15.) Such argumentative allegations have been rejected by the Ninth Circuit, this Court, and district courts across the country as frivolous, irrational, or unintelligible. See, e.g., U.S. v. Studley, 783 F.2d 934, 937 n.3 (9th Cir. 1986); Mackey v. Bureau of Prisons, No. 1:15-cv-1934-LJO-BAM, 2016 WL 3254037, at *1 (E.D. Cal. Jun. 14, 2016); U.S. v. Staten, No. 1:10-cr-179, 2012 WL 2389871, at *3 (M.D. Pa. Jun. 25, 2012); Banks v. Fla., No. 19-756, 2019 WL 7546620, at *1 (M.D. Fla. Dec. 17, 2019), report and recommendation adopted, 2020 WL 108983 (M.D. Fla. Jan. 9, 2020) (collecting cases and stating that legal theories espoused by sovereign citizens have been consistently rejected as "utterly frivolous, patently ludicrous, and a waste of . . . the court's time, which is being paid by hard-earned tax dollars"); U.S. v. Wunder, No. 16-9452, 2019 WL 2928842, at *5 (D.N.J. Jul. 8, 2019) ("legal-sounding but meaningless verbiage commonly used by adherents to the so-called sovereign citizen movement" is nothing more than a nullity); Zahir v. Mountcastle, No. 21-CV-1023, 2021 WL 1143381, at *3 (E.D. Pa. Mar. 25, 2021) ("other than irrelevant statements of legal fictions, Zahir asserts no facts to demonstrate any viable cause of action for money damages. Legal sounding but meaningless verbiage is nothing more than a nullity"). Further, while the majority of Plaintiff's complaint appears to be devoted to an FOIA claim against each Defendant, it remains unclear whether this is the only claim Plaintiff is asserting, as he also references multiple constitutional amendments, statutes, and makes general allusions to unspecified "rights" without explanation throughout the complaint.

Nor does Plaintiff articulate actions taken by each named Defendant. Instead, Plaintiff broadly alleges all Defendants failed entirely to respond to his FOIA requests; yet this allegation is belied by other allegations that certain identified Defendants did, in fact, respond to Plaintiff's FOIA requests, but that Plaintiff was dissatisfied with their responses. Given these internal inconsistencies and failure to allege his claims with the requisite specificity, it is unclear to the Court which actions Plaintiff is attributing to each of the eight named Defendants. The overall

result is that each of the eight Defendants must estimate where "claims" begin and end and consider every alternative target and legal theory, whether intended by Plaintiffs or not. As a result, the collective defendants "cannot adequately prepare a defense without knowing which Defendant faces which allegations." Hughey, 2014 WL 5473184, at *4. This violates Rule 8.

Because the complaint fails to comply with Rule 8, Plaintiff shall be directed to file an amended complaint that complies with the short and plain pleadings requirements of Rule 8, as highlighted in this order.

Nonetheless, to the extent Plaintiff intended to assert claims pursuant to the FOIA, the Court shall provide the legal standard for such a claim and address the pleading deficiencies.

### B. Freedom of Information Act

The Freedom of Information Act ("FOIA") provides for the mandatory search and disclosure of information held by federal agencies, unless the records fall within one of nine exemptions specified in the Act. NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 220–21 (1978); Rojas v. Fed. Aviation Admin., 989 F.3d 666, 669–70 (9th Cir. 2021), cert. denied, 142 S. Ct. 753 (2022); Inter-Coop. Exch. v. U.S. Dep't of Com., 36 F.4th 905, 908 (9th Cir. 2022); see also 5 U.S.C. §§ 552(b)(1)–(9) (enumerating the nine exemptions). It provides, among other things, that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." See Wright v. U.S. Dep't of Just., 379 F. Supp. 3d 1067, 1076 (S.D. Cal. 2019) (citing 5 U.S.C. § 552(a)(3)(A)).

1. Exhaustion of Administrative Remedies

Through the FOIA, Congress conferred jurisdiction upon the district court "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly held from the complainant." 5 U.S.C. § 552(a)(4)(B). "This vests the district court with all the powers of an equity court to issue injunctive relief from withholding of agency records." In re Steele, 799 F.2d 461, 465 (9th Cir. 1986); Taylor v. Sturgell, 553 U.S. 880, 885 (2008) ("If an agency refuses to furnish the requested records, the requester may file suit in

federal court and obtain an injunction ordering the production of any agency records improperly withheld.") (internal quotations omitted).

Exhaustion of a party's administrative remedies is required under the FOIA, however, before that party can seek redress from the district court. Steele, 799 F.2d at 465–66. This serves to "protect[ ] administrative agency authority and promot[e] judicial efficiency." McCarthy v. Madigan, 503 U.S. 140, 145 (1992). It also allows agencies to correct their mistakes and creates a useful record "should judicial review become necessary." Amerco v. NLRB, 458 F.3d 883, 888 (9th Cir. 2006). Pursuant to the FOIA, prior to initiating suit in the district court, the requestor must request specific information from the agency in accordance with published administrative procedures, 5 U.S.C. §§ 552(a)(1), (2) & (3); have the request improperly refused, 5 U.S.C. § 552(a)(4)(B); Steele, 799 F.2d at 466; file available administrative appeals, Taylor v. Appleton, 30 F.3d 1365, 1369 (11th Cir. 1994); McDonnell v. U.S., 4 F.3d 1227, 1240 (3d Cir. 1993); Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 63–64 (D.C. Cir. 1990); and present proof that he has exhausted all administrative remedies. Hedley v. U.S., 594 F.2d 1043, 1044 (5th Cir. 1979).

Under certain circumstances, a district court may waive the requirement to file an administrative appeal, such as "when . . . further administrative proceedings would prove futile," on the basis that this exhaustion requirement under the FOIA "is a prudential rather than jurisdictional consideration." Aguirre v. U.S. Nuclear Regul. Comm'n, 11 F.4th 719, 725 (9th Cir. 2021) (citing Yagman v. Pompeo, 868 F.3d 1075, 1083–84 (9th Cir. 2017)) (referring to "constructive" exhaustion as "futility exception" to exhaustion); see also Antonelli v. Fed. Bureau of Prisons, 591 F. Supp. 2d 15, 25 (D.D.C. 2008) (holding a district court "need not dismiss a claim for failure to exhaust if it determines that the 'purposes and policies underlying the exhaustion requirement' would not be undermined by reaching the merits."). However, the Ninth Circuit recently joined other circuit courts in holding that, if an agency responds to a request before suit is filed, even if after the procedural deadline, a requestor must "actually" exhaust his administrative remedies under the FOIA. Aguirre, 11 F.4th at 726 (finding that, where requestor refused to respond to agency's request for more specific terminology in request and instead

waited until the request was filled and then sued in federal court, he was required to actually exhaust his administrative remedies through the administrative appeal process) (collecting cases); see also Antonelli, 591 F. Supp. 2d at 25 ("to proceed on a claim where the agency has not had the opportunity to act would not only undercut the exhaustion requirement but would also encourage circumvention of the administrative process simply by filing a lawsuit.").

Furthermore, other exhaustion requirements cannot be waived. For example, "when a requestor fails to pay required fees, he fails to exhaust." Id. (citing Oglesby, 920 F.2d at 66 ("Exhaustion does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees."); Pollack v. Dept. of Just., 49 F.3d 115, 119–20 (4th. Cir. 1995), cert. denied, 516 U.S. 843 (1995) (characterizing the payment of fees as a "statutory obligation")); see also 5 U.S.C. §§ 552(a)(4)(A)(i)–(ii) (authorizing each agency to promulgate regulations specifying schedule of fees applicable to the processing of requests and establishing procedures and guidelines for determining when such fees should be waived or reduced, with requirement that fees be limited to "reasonable standard charges for document search and duplication"), 552(a)(4)(A)(v)–(vi) (agency may require advance payment of fees where requester has previously failed to pay fees in a timely fashion or the agency has determined the fee will exceed $250, or pursuant to statute for particular types of records). At bottom, whether "actually" or "constructively," a plaintiff must exhaust his administrative remedies before filing suit, and failure to do so operates as a jurisdictional bar to judicial review of a plaintiff's claims. See Aguirre, 11 F.4th at 728–29; Hyman v. Merit Sys. Prot. Bd., 799 F.2d 1421, 1423 (9th Cir. 1986).

2.  Requirement to Reasonably Describe Records Requested

Further, an agency's obligations under the FOIA to search for and release records "are not triggered . . . until it has received a proper FOIA request in compliance with [the agency's] published regulations." Antonelli, 591 F. Supp. 2d at 24, 26. A proper, perfected FOIA request is one that "reasonably describes" the records sought. 5 U.S.C. § 552(a)(3)(A). "Broad, sweeping requests lacking specificity are not permissible," nor are requests that would require the agency to "engage in quite a bit of guesswork to execute." Yagman, 868 F.3d at 1078, 1081

(holding request for "[r]ecords/information" on "the names and company/organization affiliations of any CIA employees, agents, operatives, contractors, mercenaries, and/or companies who are alleged to have engaged in torture of persons" specifically, the names and affiliations of those "as to whom President Obama stated that 'we tortured some folks' on August 1, 2014," was impermissibly broad and vague); Marks v. U.S., 578 F.2d 261, 263 (9th Cir. 1978) (an "all-encompassing search of the records of every field office of the FBI" would not "reasonably describe" the records sought); Mason v. Callaway, 554 F.2d 129 (4th Cir. 1977), cert. denied, 434 U.S. 877 (1977), reh. denied, 434 U.S. 935 (1977) (request for "all correspondence, documents, memoranda, tape recordings, notes, and any other material pertaining to the atrocities committed against plaintiffs . . ., including, but not limited to the files of [various government offices]" was not reasonably descriptive); Irons v. Schuyler, 465 F.2d 608 (1972), cert. denied, 409 U.S. 1076 (1972) (request for "all unpublished manuscript decisions of the Patent Office, together with such indices as are available . . . ." was too broad); Fonda v. C.I.A., 434 F. Supp. 498 (D.D.C. 1977) (request for all documents filed under requestor's name or which "concern her" but do not mention her name was too broad). Thus, a party's failure to perfect a request also constitutes failure to exhaust administrative remedies, which precludes judicial review. Flowers v. IRS, 307 F. Supp. 2d 60, 67 (D.D.C. 2004); cf. Yagman, 868 F.3d at 1084 (failure to reasonably describe requested records was not "jurisdictional," but nevertheless required remand to agency to further confer with requestor and determine a reasonable request).

   3.  Application of FOIA to Federal Agencies Only

  Finally, the FOIA applies only to federal agencies and authorities. See 5 U.S.C. § 552; see also Dittman v. Cal., 191 F.3d 1020, 1026 (9th Cir. 1999) (FOIA "is specifically limited to actions against agencies of the United States Government. The civil remedy provisions of the statute do not apply against private individuals, state agencies, private entities, or state and local officials."); St. Michael's Convalescent Hosp. v. Cal., 643 F.2d 1369, 1373 (9th Cir. 1981) (FOIA "does not encompass state agencies or bodies").

   4.  Allegations in the Complaint

  As an initial matter, because the FOIA only applies to federal agencies, Dittman, 191 F.3d

11

1  at 1026, the Court notes any FOIA claim Plaintiff seeks to assert against the state entity
2  Defendants California DFPI, the SOS, or the Kings County is precluded as a matter of law.³

3  As to the remaining federal agency Defendants, the Court cannot conclude Plaintiff has
4  alleged sufficient facts to either establish this Court has jurisdiction over his FOIA claims, or to
5  state a cognizable FOIA claim. As previously discussed, Plaintiff contends no Defendant
6  responded to his FOIA requests, but his allegations demonstrate some Defendants did respond.
7  Because Plaintiff's allegations largely consist of sweeping statements as to all Defendants without
8  identifying the actions or inactions of each individual named Defendant, and in light of the
9  internal inconsistencies in the complaint, the Court cannot conclude at this juncture that Plaintiff
10 "constructively" exhausted his administrative remedies as to any of the five federal agency
11 Defendants. Aguirre, 11 F.4th at 725–26; Antonelli, 591 F. Supp. 2d at 25 (indicating district
12 court should only deem exhaustion waived/find constructive exhaustion if the "purposes and
13 policies underlying the exhaustion requirement would not be undermined by reaching the
14 merits.").

15 Nor can the Court conclude Plaintiff met his burden to establish he "actually" exhausted
16 his administrative remedies based on the allegations. Hedley, 594 F.2d at 1044. As indicated by
17 the controlling legal authorities, payment of applicable fees is required to satisfy the exhaustion
18 requirement. Aguirre, 11 F.4th at 726; Oglesby, 920 F.2d at 66; Pollack, 49 F.3d at 119–20.
19 Here, the Court reasonably infers from Plaintiff's multiple references to his indigency,
20 contentions that he was discriminated against due to his indigency by agencies requiring him to
21 pay fees, and assertion in his FOIA requests that he expected any fees to be deemed waived due
22 to his indigency (see, e.g., ECF No. 1 at 12–15, 34, 40) that Plaintiff did not pay any
23 administrative fees related to the search and production of his FOIA requests. Indeed, nowhere in
24 the complaint does Plaintiff allege that he paid the fees, applied for a fee waiver, was granted a

---

³ It is unclear from the allegations in the complaint whether Plaintiff also made a request pursuant to the CPRA, Cal. Gov't Code §§ 6250–70, 6275–76.48, and/or seeks to assert a claim under the CPRA against any of the state entity Defendants. In any event, the Court notes Plaintiff's sole remedy for denial of a proper CPRA request "is to file a writ of mandamus in state court and money damages are not an available remedy." Brooks v. Vallejo City Unified Sch. Dist., No. 2:12-CV-1466-GEB-EFB, 2013 WL 943460, at *4 (E.D. Cal. Mar. 11, 2013) (citing Cal. Gov't Code §§ 6258, 6259(d)), report and recommendation adopted, 2013 WL 1330516 (E.D. Cal. Mar. 29, 2013); Booth v. Burdick, No. 1:18-cv-00670-LJO-BAM, 2019 WL 188644, at *2 (E.D. Cal. Jan. 14, 2019) (same).

fee waiver, was denied a fee waiver, or appealed any refusal to waive fees. Oglesby, 920 F.2d at 66 ("Exhaustion does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees."). Instead, Plaintiff's "copies" of his FOIA requests indicate an intent to submit an application for a fee waiver at a future date (ECF No. 1 at 20, 33), unilaterally assert that his trust account statement demonstrates his qualification to have fees waived (id. at 34, 40), or do not mention fees at all (see generally id. at 26–32, 36–39). See Oglesby, 920 F.2d at 66; see also Aguirre, 11 F.4th at 726–27 (requestor failed to exhaust where he did not pay the fees and his appeal letter attacked the agency's delayed response and production timeline but did not dispute the agency's fee determination). On this record, the Court finds Plaintiff did not sufficiently allege facts to support a finding of exhaustion of his FOIA claims.

Consequently, Plaintiff has not alleged facts sufficient to establish the Court has subject matter jurisdiction over his FOIA claims, nor has he alleged sufficient facts to state a cognizable claim under the FOIA.

Having determined Plaintiff fails to state a cognizable claim for FOIA violations, the Court shall turn to the remainder of Plaintiff's potential claims. In short, the Court finds the complaint does not allege facts that appear to implicate in any way any of the other statutes, constitutional amendments, or treaties to which Plaintiff vaguely alludes on page 5 of the complaint. However, in an abundance of caution, the Court shall provide certain standards of law as they *may* relate to claims Plaintiff was attempting to bring against the specifically-named Defendants in this action.

**C.      Federal and Constitutional Claims Against State Entities**

The complaint names the following state entity defendants: DFPI, SOS, and Kings County. (ECF No. 1 at 5.) To the extent Plaintiff seeks to raise claims against these Defendants arising from violations of his civil rights under federal law and the federal constitution, Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law. 42 U.S.C. § 1983; Long v. Cnty. of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006); Jones, 297 F.3d at 934.

Local governmental units, such as Defendant Kings County, are considered "persons"

within the meaning of § 1983. Will v. Mich. Dep't. of State Police, 491 U.S. 58, 70 (1989); Cnty. of L.A. v. Superior Ct., 68 Cal. App. 4th 1166, 1171 (1998). However, while local governmental units are considered "persons" within the meaning of § 1983, a local government unit may not be held responsible for the acts of its employees or officials under a respondeat superior theory of liability. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–91 (1978); see also Bd. of Cnty. Comm'rs v. Brown (Brown), 520 U.S. 397, 403 (1997). Thus, municipal liability must rest on the actions of the municipality, and not of the actions of its employees or officers. See Brown at 403.

Plaintiff has not named any individual state actors, but only state agencies (*i.e.*, the DFPI, SOS, and Kings County). Therefore, to the extent he seeks to bring a cause of action for civil rights violations against a state agency Defendant, Plaintiff must satisfy the criteria of a Monell claim. A Monell claim may be stated under three theories of municipal liability: (1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct. Clouthier v. Cnty. of Contra Costa, 591 F.3d 1232, 1249–50 (9th Cir. 2010).

A plaintiff may establish municipal liability based on an official policy or custom by demonstrating "the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.' " Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Ulrich v. City & Cnty. of S.F., 308 F.3d 968, 984–85 (9th Cir. 2002)). To establish liability for governmental entities under this theory, a plaintiff must show (1) that the plaintiff "possessed a constitutional right of which [he or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks omitted).

Finally, a plaintiff may claim Monell liability where an "official with final policy-making

authority ratifie[s] a subordinate's unconstitutional decision or action and the basis for it." Gillette v. Delmore, 979 F.2d 1342, 1346–47 (9th Cir. 1992). A policymaker's "knowledge of an unconstitutional act does not, by itself, constitute ratification." Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999). "[A] policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." Id. Rather, ratification requires the authorized policymaker to make a "conscious, affirmative choice." Gillette, 979 F.2d at 1347. Ratification "and thus the existence of a *de facto* policy or custom, can be shown by a municipality's post-event conduct, including its conduct in an investigation of the incident." Dorger v. City of Napa, No. 12-cv-440 YGR, 2012 WL 3791447, at *5 (N.D. Cal. Aug. 31, 2012) (citing Henry v. Cnty. of Shasta, 132 F.3d 512, 518 (9th Cir. 1997)). See Christie, 176 F.3d at 1240 (finding failure to discipline along with after-the-fact conduct indicating policymaker agreed with subordinate's conduct sufficient to show ratification).

To plead a Monell claim with sufficient particularity under the requirements set forth by Iqbal and Twombly, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)).

Finally, the Court notes that the denial of an FOIA request does not rise to the level of a constitutional claim. See Rodrigues v. Norwood, No. 10-629-R (MAN), 2010 WL 2740174, at *5–6 (C.D. Cal. Jul. 9, 2010) (dismissing due process claims on ground that allegedly improper denial of an FOIA request does not rise to the level of a constitutional claim); see also Houchins v. KQED, Inc., 438 U.S. 1, 13 n.7, 14–15 (1978) (distinguishing from FOIA, "There is no constitutional right to have access to particular information, or to require openness from the bureaucracy . . . Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control."). Therefore, Plaintiff may not maintain a Monell claim against the state entity Defendants based on his allegations that Defendants did not respond to his FOIA requests.

Furthermore, to the extent Plaintiff seeks to assert a claim that the state entity Defendants

unlawfully discriminated against him on the basis of his indigent status when they rejected his FOIA and fee waiver requests, such claim also fails as a matter of law. As noted, a Monell claim must be premised on a constitutional violation. Clouthier, 591 F.3d at 1249–50. Yet, as the aforementioned legal authorities demonstrate, violations of the FOIA does not rise to the level of a constitutional violation, Rodrigues, 2010 WL 2740174, at *5–6, nor can a cognizable FOIA claim be asserted against state entities, Dittman, 191 F.3d at 1026. Absent any underlying violation, Plaintiff fails to state a cognizable claim.

### D. Constitutional Claims Against Federal Entities

Plaintiff has named the following federal Defendants: IRS, GSA, SEC, DOJ, and DOT. Civil rights claims for constitutional violations against these federal agency Defendants, however, are precluded under the following legal authorities.

#### 1. Sovereign Immunity

As an initial matter, "[i]t is well settled that the United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued." Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985). "The waiver of sovereign immunity is a prerequisite to federal-court jurisdiction." Tobar v. U.S., 639 F.3d 1191, 1195 (9th Cir. 2011). If a plaintiff cannot establish that its action against the United States falls within a waiver of sovereign immunity, the action must be dismissed. See Dunn & Black, P.S. v. U.S., 492 F.3d 1084, 1088 (9th Cir. 2007).

It is well settled "that Congress has not waived immunity for suits seeking monetary damages that arise under the Constitution." Jackson v. Bush, 448 F. Supp. 2d 198, 201 (D.D.C. 2006); see Clark v. Library of Cong., 750 F.2d 89, 102–03 (D.C. Cir. 1984). Accordingly, to the extent Plaintiff purports to sue the United States for constitutional violations, the Court lacks subject matter jurisdiction over these claims, and they fail as a matter of law.

#### 2. Bivens Claims

In addition, Plaintiff's constitutional claims against the aforementioned named federal agency Defendants are precluded by the following legal authorities. As noted by the Supreme Court, § 1983 applies to state and local officers, while Bivens v. Six Unknown Fed. Narcotics

1  Agents, 403 U.S. 388 (1971), infers a parallel damages action against federal officers. Hartmann
2  v. Moore, 547 U.S. 250, 254 n.2 (2006) (citations and quotations omitted).  In Bivens, the
3  Supreme Court "established that the victims of a constitutional violation by a federal agent have a
4  right to recover damages against the official in federal court despite the absence of any statute
5  conferring such a right." Hartmann, 547 U.S. at 254 n.2 (quoting Carlson v. Green, 446 U.S. 14,
6  18 (1980)).  Thus, although more limited in some respects, a Bivens action is the federal analog to
7  suits brought against state officials under § 1983.  Id. (citations omitted).  Accordingly, to the
8  extent Plaintiff seeks to assert a claim against any federal defendants, he cannot seek to recover
9  through § 1983, but must assert a Bivens action.

10  However, the Supreme Court has also held that a Bivens-based cause of action cannot be
11  maintained against a federal agency but only against individual federal employees.  F.D.I.C. v.
12  Meyer (Meyer), 510 U.S. 471, 484–85 (1994); see also W. Radio Servs. Co. v. U.S. Forest Serv.,
13  578 F.3d 1116 (9th Cir. 2009) (citing Meyer for ruling that no Bivens remedy is available against
14  a federal agency).  Plaintiff has not named any individual federal employee defendants, but only
15  federal agencies.  Based on this authority, Plaintiff may not sue the named federal agency
16  Defendants IRS, GSA, SEC, DOJ, or DOT for constitutional violations.

17  Finally, the Court again notes that the denial of an FOIA request does not rise to the level
18  of a constitutional claim; on this basis, as well, Plaintiff may not maintain a Bivens claim against
19  the aforementioned federal agency Defendants arising from allegations that Defendants did not
20  respond to his FOIA requests.  See Johnson v. Exec. Off. for U.S. Att'ys, 310 F.3d 771, 777
21  (D.C. Cir. 2002) (affirming dismissal of due process claim arising from alleged mishandling of
22  FOIA request as "the comprehensiveness of FOIA precludes the creation of a *Bivens* remedy").

23  In sum, Plaintiff has not and cannot state any constitutional-based claims against the
24  named state entity and federal agency Defendants arising from their purported refusal to comply
25  with Plaintiff's FOIA requests.

26  **E.    Leave to Amend**

27  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely
28  given when justice so requires," because "the court must remain guided by the underlying

17

purpose of Rule 15 . . . to facilitate decisions on the merits, rather than on the pleadings or technicalities." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court," which may deny leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith. Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

On this record, the Court cannot rule out the possibility that Plaintiff can plausibly allege facts supporting an FOIA claim against one or more of the named federal Defendants, if given leave to amend. For this reason, Plaintiff may amend his complaint to plead specific facts to address the deficiencies described in this order. "If [Plaintiff] does not take advantage of the opportunity to fix his complaint, [the Court] may convert the dismissal of the complaint into dismissal of the entire action."). Lira v. Herrera, 427 F.3d 1164, 1169 (9th Cir. 2005).

## IV.

## CONCLUSION AND ORDER

For the foregoing reasons, Plaintiff fails to state a cognizable claim and shall be granted leave to file an amended complaint to cure the deficiencies identified in this order with respect to his FOIA claims against the federal Defendants. Lopez, 203 F.3d at 1127. Plaintiff's first amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must also state what each named defendant did that led to the deprivation of Plaintiff's rights, Iqbal, 556 U.S. at 678–79. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

To the extent Plaintiff must submit a handwritten complaint and supporting exhibits, he is directed to write as legibly as possible and, to the best of his ability, to write his statements on lined paper with only one line of text per line and not multiple text columns.

Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927. Absent court approval, Plaintiff's first amended complaint must be "complete in itself without reference to the prior or superseded pleading." E.D. Cal. L.R. 220.

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of the Court shall send Plaintiff a civil rights complaint form;
2. Plaintiff shall file a first amended complaint curing the deficiencies identified by the Court in this order **no later than September 26, 2022**;
3. The first amended complaint, including attachments, **shall not exceed twenty-five (25) pages in length**; and
4. If Plaintiff fails to file a first amended complaint in compliance with this order, the Court will recommend to a District Judge that this action be dismissed consistent with the reasons stated in this order.

IT IS SO ORDERED.

Dated:   **August 11, 2022**

UNITED STATES MAGISTRATE JUDGE