# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL DWAYNE CAETANO,<br><br>Plaintiff,<br><br>v.<br><br>INTERNAL REVENUE SERVICE, et al.,<br><br>Defendants. | Case No. 1:22-cv-00837-JLT-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF SECOND AMENDED COMPLAINT<br><br>(ECF No. 9)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Plaintiff Nathaniel Dwayne Caetano ("Plaintiff"), a state prisoner proceeding *pro se* and *in forma pauperis*, initiated this civil action against various federal and state entities on July 8, 2022. (ECF No. 1.) The Court screened Plaintiff's complaint and first amended complaint, finding both failed to state a claim. (ECF Nos. 6, 8.) The operative second amended complaint ("SAC"), which purports to assert Freedom of Information Act claims against the Internal Revenue Service ("IRS"), General Service Administration ("GSA"), and Securities and Exchange Commission ("SEC") is now before this Court for screening. Having considered the SAC, as well as the Court's file, the Court issues the following screening order and findings and recommendations recommending that the second amended complaint be dismissed, without leave to amend, for lack

of jurisdiction and as frivolous, and for failure to state a claim, and that this action be dismissed.

## I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The standard under Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal (Iqbal), 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly (Twombly), 550 U.S. 544, 555 (2007) (internal quotation marks omitted)). Thus, a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. Id. (citations omitted).

A document filed *pro se*, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (on civil rights actions filed by *pro se* prisoners, pleadings should be liberally construed with any doubt resolved in the *pro se* prisoner's favor). Nevertheless, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings, it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Federal Rules of Civil Procedure 8, 10, and 12. Rather, as both the Supreme Court and Ninth Circuit have repeatedly recognized, the

requirements set forth in Rules 8, 10, and 12 are procedural rules that even *pro se* civil litigants must follow. See McNeil v. U.S., 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (holding *pro se* litigants are held to same procedural rules as litigants with counsel).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678–79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). As for the nature of what is "facially plausible," the Supreme Court explained that "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." Iqbal, 556 U.S. at 679. Thus, the "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

As a general rule, the Court must limit its review to the operative complaint and may not consider facts presented in extrinsic evidence. See Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001). Materials submitted as part of the complaint, however, are not "outside" the complaint and may be considered. Id.; Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Moreover, the Court is not required to accept as true conclusory allegations which are contradicted by exhibits to the complaint. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001); Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295–96 (9th Cir. 1998). Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured

by amendment. Cato v. U.S., 70 F.3d 1103, 1106 (9th Cir. 1995).

## II.

## DISCUSSION

**A.  Frivolousness/Lack of Subject Matter Jurisdiction**

As previously noted, under § 1915, the Court must dismiss the case if the action is frivolous or malicious. 28 U.S.C. § 1915(e)(2)(B). The Court lacks subject matter jurisdiction over frivolous cases. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998) (holding federal courts lack subject matter jurisdiction to consider claims that are "so insubstantial, implausible, foreclosed by prior decisions of this court, or otherwise completely devoid of merit as not to involve a federal controversy."); Hagans v. Lavine, 415 U.S. 528, 537 (1974) (court lacks subject matter jurisdiction over claims that are "essentially fictitious," "obviously frivolous" or "obviously without merit"); see also Grancare, LLC v. Thrower by & through Mills, 889 F.3d 543, 549–50 (9th Cir. 2018) (noting that the "wholly insubstantial and frivolous" standard for dismissing claims operates under Rule 12(b)(1) for lack of federal question jurisdiction).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). Thus, a court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are "clearly baseless," a category encompassing allegations that are "fanciful," "fantastic," and "delusional"). Id. at 327; see also Denton v. Hernandez, 504 U.S. 25, 33 (1992) (discussing Neitzke, "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them"); Fed. R. Civ. P. 12(h)(3). "[T]he frivolousness determination is a discretionary one" for the court. Denton, 504 U.S. at 33.

Here, though couched in terms of an FOIA claim, the SAC is "replete with the legal-sounding but meaningless verbiage commonly used by adherents to the so-called sovereign-citizen movement." See Sealey v. Branch Banking and Tr. Co., No. 2:17-cv-785-MHT-SMD, 2019 WL 1434065, at *2 (M.D. Ala. 2019). While many various sub-groups and ideologies may

fall under the sovereign-citizen umbrella, the overarching unifying principle is the belief that, even though they physically reside in this country, the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior.[1] See Gravatt v. U.S., 100 Fed. Cl. 279, 282 (2011); U.S. v. Ulloa, 511 Fed. App'x 105, n.1 (2d Cir. 2013).

In particular, the SAC bears indicia of Plaintiff's reliance on the "Redemptionist" theory. As discussed in footnote 1, the "Redemptionist" theory propounds that a person has a split personality: a real person and a fictional person called the "strawman." See Monroe v. Beard, 536 F.3d 198, 203 n.4 (3d Cir. 2009). Redemptionists claim that by documents such as birth certificates and social security cards, the government created strawmen out of its citizens. See Gravatt, 100 Fed. Cl. at 283 (citations omitted). Through these strawmen "contracts," individuals unknowingly pledge themselves and their property, through their newly created fictitious entities, as security for the national debt in exchange for the benefits of citizenship. Id. However, Redemptionists argue the government cannot hold the profits it makes from this use of its citizens

---

[1] The FBI has labeled the sovereign citizens a domestic terrorist group. See "Sovereign Citizens A Growing Domestic Threat to Law Enforcement," FBI Law Enforcement Bulletin (Sept. 2011), http://www.fbi.gov/stats-services/publications/lawenforcement-bulletin/September-2011/sovereign-citizens. As one district court from the Northern District of California provides, the website of the Southern Poverty Law Center provides a detailed explanation of the tenets of this "highly unusual and thoroughly debunked system of beliefs—amounting to little more than a series of baseless and senseless conspiracy theories…." More specifically, it provides:

> [The sovereign citizen] ideology is based on the belief that the original system of government in this country (what sovereigns refer to as "common law") was secretly replaced by a new system based on admiralty law and the international law of commerce. Under what sovereigns call the common law, as the theory goes, the sovereigns would be free, but under admiralty law, they view themselves as enslaved; they believe that secret government forces have a vested interest in keeping them enslaved. Some sovereigns believe this transformation took place during the Civil War, some blame the Federal Reserve Act, and still others blame the abandonment of the gold standard. In any case, they are all adamant that judges around the country know about this supposedly secret government takeover but are denying the sovereigns' efforts to "redeem" their personages from this perceived state of captivity out of a treasonous loyalty to these hidden and malevolent government forces. Their process for "redeeming" themselves and splitting what they view as the straw-man persona, supposedly created for each American by the participants of the secret government takeover (denominated by writing people's names in all capital letters), from the flesh-and-blood person is called "redemption." Once separated from the corporate shell they view as having been created by the nefarious forces that secretly overtook the government, the newly freed person believes himself or herself to now exist outside of the jurisdiction of all admiralty laws—and, therein one can find the explanation for their refusal to acknowledge the "jurisdiction" of all governmental entities over their persons and their activities.

La Vell Harris v. Cnty. of Lake, No. 20-CV-09329-RMI, 2021 WL 2170138, at *1 (N.D. Cal. May 10, 2021), report and recommendation adopted sub nom. Harris v. Cnty. of Lake, No. 20-CV-09329-HSG, 2021 WL 2170135 (N.D. Cal. May 25, 2021), appeal dismissed, No. 21-16054, 2022 WL 17847243 (9th Cir. Nov. 18, 2022) (citing https://www.splcenter.org/fighting-hate/extremist-files/ideology/sovereign-citizens-movement).

and their property in the general fund of the United States, because doing so would constitute fraud, given that the profits technically belong to the actual owners of the property being pledged (*i.e.*, the real people represented by the fictitious entities). Id.  Therefore, the government holds the profits in "secret, individual trust accounts," one for each citizen.  Id.  To collect the money held by the United States in the "secret, individual trust account," sovereign citizens employ the process known as "redemption." Id.

Redemptionists claim individuals can thus "free" themselves by filing one or more Uniform Commercial Code financing statements naming themselves as both the secured party and the debtor, with the intent "to register a security interest in the fictitious entity that was created by [their] birth certificate and other government documents ...."[2]  Id. (citations omitted); see also Monroe, 536 F.3d at 203 n.4.  Thereafter, the real person can demand that government officials pay enormous sums of money to use the strawman's name or, in the case of a prisoner, to keep him in custody; if the officials refuse, inmates are encouraged to file liens against correctional officers and other prison officials in order to extort their release from prison. Monroe, 536 F.3d at 203 n.4.  Adherents of this scheme also advocate that inmates copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers.  Id.

Here, Plaintiff points to various data notated on a copy of his birth certificate appended to the SAC, explaining that they represent various biblical and other references, and asserts his birth certificate constitutes "the Deed and Title to this planet AND the DISTRICT OF COLUMBIA and UNITED STATES OF AMERICA making Me CEO and Prasadat of Iraq and U.S.A." (ECF No. 9 at 43.)  Plaintiff also refers to himself at various points in the SAC as the "Sole Acting President of the United States of America" (id. at 9, 12, 18), the "attorney-in-fact, California General" (id. at 18), a "Secured Party Creditor" over himself (id. at 18), and the "real, living, natural Man Prophet Nathaniel Dwayne Caetano" (id. at 24).  He indicates he has "redeem[ed]" himself with an Oregon lottery ticket worth eight dollars.  (Id. at 11.)

---

[2] Incidentally, whenever a person's name is written in all capital letters, as it is on a birth certificate, the Redemptionists believe that only the strawman is referenced; whereas, the real flesh and blood person's name is written using only initial capital letters.  Id.

On another copy of his birth certificate appended to the SAC, Plaintiff identifies his state birth certificate number as the "registered security" that underwrites his Bond CUSIP# 315805382, mutual fund #00104, symbol FLSCX, and his "Fidelity Life Small Cap Fund," allegedly valued at $43,700,000. (Id. at 42.) Plaintiff explains to the Court via a hand-written note in the blank spaces of this copy of his birth certificate,

> Your Honors pursuant to 46 U.S.C. § 1247 of the Shipping Code and 18 § U.S.C. 9 of the Federal "criminal code" make all U.S.A. citizens "Vessels" in Admiralty where pursuant to 27 § CFR 72.11 making all crimes commercial, My Certificate of Live Birth pursuant to 15 U.S.C. § 78 and HJR-192 bankruptcy with 12 U.S.C. § 95a and § 95b codifying the suspension of the Gold Clause, is Registered as Registered Security #104 803 4302 that Underwrites Bond CUSIP #315805382. Its $43,700,000.00 value is because over 25 years I've performed all of the SF24 Bid and SF25 Performance Bonds where I've EARNED the penal sums of every SF25A and SF274 Payment and Reinsurance Payment Bonds in My PRINCIPAL name NATHANIEL DWAYNE CAETANO.

(Id.) Importantly, the account numbers Plaintiff identifies in his personal note to the Court explaining why he is presently owed nearly $43 million from the U.S. Government are the same series of numbers which Plaintiff provides in his multiple FOIA requests sent to the IRS, GSA and SEC—FOIA requests to which Plaintiff claims Defendants never responded, and which serve as the basis of the instant FOIA claims.[3] (See id. at 6–10.) In a letter to the IRS about his pending FIOA requests (attached as another exhibit to the SAC), Plaintiff indicates that the bonds currently valued at $44 million are derived from his criminal "case/account 09CM3557" (id. at 24), and purported copyright violations relating to Plaintiff's "common law copyright notice" that he holds, as secured party creditor, over himself (see id. at 15). Relatedly, in a letter to the National Archives – Office of Government Information Services (a nonparty to this litigation), Plaintiff indicates the records that are the subject of his FOIA requests will somehow facilitate his

---

[3] In fact, it appears that at least some of the Defendants did respond to Plaintiff's request, just not in the manner in which Plaintiff would have preferred. The SEC sent Plaintiff a letter, which Plaintiff appends to the SAC, informing Plaintiff the "issue [he] raise[s] is not one over which the SEC has jurisdiction," and directing Plaintiff to consult an attorney. (Id. at 20.) The IRS also sent Plaintiff a letter, informing Plaintiff that it does not maintain any records responsive to his requests, which are itemized as Numbers 1 through 74, and contain requests such as "Number 28: You stated you need to file a claim to the "VACCINE INJURY COMPENSATION TRUST FUND," and "Numbers 29–74: You listed securities numbers you wanted us to search for you that you believe are actual instruments (titles, deeds, certificates of stock, contracts, or promissory notes)…." and suggesting no such instruments exist. (Id. at 22–23.)

release from prison.[4]  (Id. at 28–30.)

Even while Plaintiff does not expressly state that he is a "sovereign citizen," the Court finds Plaintiff's allegations, explanations, and exhibits are all demonstrative of the fact that Plaintiff's claims are entirely rooted in the "Redemptionist" theory of the sovereign citizen ideology.  The "Redemptionist" theory is another frivolous legal theory that has been rejected by countless federal courts.  See, e.g., U.S. v. Ward, 182 F.3d 930, at *2 (9th Cir. 1999) (noting that contentions based on sovereign citizen arguments are "frivolous" and that "courts ordinarily reject similar contentions without extended argument") (collecting cases); U.S. v. Benabe, 654 F.3d 753, 761–67 (7th Cir. 2011) (discussing sovereign citizen arguments as "frivolous, irrational, or unintelligible," having no validity in country's legal system and recommending that they be "rejected summarily, however they are presented" and regardless of the individual's claimed status of descent, "be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being' ") (collecting cases); Trevino v. Florida, 687 Fed. App'x 861, 862 (11th Cir. 2017) (per curiam) (affirming district court's *sua sponte* dismissal of complaint as frivolous under § 1915A, and finding plaintiff's sovereign citizen arguments frivolous, "[Plaintiff's] factual allegations that he is a party to some sort of secured transaction requiring Florida to release him are clearly baseless.");  see also Vazquez v. Cal. Hwy. Patrol, No. 2:15-cv-756, 2016 WL 232332, at *2–3 (E.D. Cal. Jan. 19, 2016) (finding plaintiff's "secured party creditor" theory to be "clearly frivolous," warranting dismissal of § 1983 complaint without leave to amend); Williams v. Scheingart, No. C 15-3013-MMC, 2015 WL 7351388, at *1, (N.D. Cal. Nov. 20, 2015) (dismissing habeas petition, without leave to amend, that sought release from custody and monetary relief against various officials, on basis that the state court in which plaintiff was convicted lacked jurisdiction over him because he is a "sovereign citizen."); Farrell v. IRS, No.

---

[4] As to this last "allegation," the Court notes Plaintiff's suggestion that he is wrongfully incarcerated appears to also arise from sovereign citizen ideologies, particularly the beliefs that the government has no authority over him and, as a party to some sort of secured transaction with the government, a state prisoner is entitled to release from prison. See, e.g., Williams v. Georgia, No. 5:21-CV-439-TES-CHW, 2022 Wl 568338, *2–3 (Feb. 24, 2022); Trevino, 687 Fed. App'x at 862.  To the extent Plaintiff seeks to challenge his conviction—directly or indirectly—the proper venue is habeas corpus. See Wilkinson v. Dotson, 544 U.S. 74, 78, 81 (2005).  Further, to the extent Plaintiff seeks to challenge the legality of his detention, he was required to first seek a writ of habeas corpus.  See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (where prisoner challenges the very fact or duration of his physical imprisonment and seeks immediate or speedier release from prison, his sole remedy is a writ of habeas corpus).

CV-21-00697-PHX-DGC, 2021 WL 474778, *2–4 (D. Ariz. Oct. 12, 2021) (dismissing as frivolous sovereign citizen-based copyright infringement claims against IRS for allegedly using plaintiff's name after he copyrighted it); Liles v. Skiles, No. 2:22-cv-00004-DCN, 2022 WL 3101620 (D. Idaho Aug. 4, 2022) (dismissing as frivolous sovereign-citizen-based claims that arrest and charges amounted to trespass, extortion, theft, torture, deprivation, kidnapping, and harm) (collecting cases); see also U.S. v. Studley, 783 F.2d 934, 937 n.3 (9th Cir. 1986) (commenting that "advancement of such utterly meritless [sovereign citizen] arguments is now the basis for serious sanctions imposed on civil litigants who raise them."). Consequently, Plaintiff's claims based on this frivolous legal theory must be dismissed.

### B. Failure to State a Claim

Notwithstanding the finding that the entire SAC, which is derived from sovereign citizen-based theories, should be dismissed as frivolous, this Court finds that even under a liberal construction of Plaintiff's non-frivolous, non-conclusory allegations, the SAC fails to state a claim under the FOIA, as follows.

A complaint may be dismissed for failure to state a claim for two reasons: (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

#### 1. Legal Standard for Freedom of Information Act

The Freedom of Information Act ("FOIA") provides for the mandatory search and disclosure of information held by federal agencies, unless the records fall within one of nine exemptions specified in the Act. NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 220–21 (1978); Rojas v. Fed. Aviation Admin., 989 F.3d 666, 669–70 (9th Cir. 2021), cert. denied, 142 S. Ct. 753 (2022); Inter-Coop. Exch. v. U.S. Dep't of Com., 36 F.4th 905, 908 (9th Cir. 2022); see also 5 U.S.C. §§ 552(b)(1)–(9) (enumerating the nine exemptions). It provides, among other things, that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." See Wright v. U.S. Dep't of Just., 379 F. Supp. 3d 1067, 1076 (S.D. Cal. 2019) (citing 5 U.S.C. §

552(a)(3)(A)).

        a. **Exhaustion of Administrative Remedies**

Through the FOIA, Congress conferred jurisdiction upon the district court "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly held from the complainant." 5 U.S.C. § 552(a)(4)(B). "This vests the district court with all the powers of an equity court to issue injunctive relief from withholding of agency records." In re Steele, 799 F.2d 461, 465 (9th Cir. 1986); Taylor v. Sturgell, 553 U.S. 880, 885 (2008) ("If an agency refuses to furnish the requested records, the requester may file suit in federal court and obtain an injunction ordering the production of any agency records improperly withheld.") (internal quotations omitted).

Exhaustion of a party's administrative remedies is required under the FOIA, however, before that party can seek redress from the district court. Steele, 799 F.2d at 465–66. This serves to "protect[] administrative agency authority and promot[e] judicial efficiency." McCarthy v. Madigan, 503 U.S. 140, 145 (1992). It also allows agencies to correct their mistakes and creates a useful record "should judicial review become necessary." Amerco v. NLRB, 458 F.3d 883, 888 (9th Cir. 2006). Pursuant to the FOIA, prior to initiating suit in the district court, the requestor must request specific information from the agency in accordance with published administrative procedures, 5 U.S.C. §§ 552(a)(1), (2) & (3); have the request improperly refused, 5 U.S.C. § 552(a)(4)(B); Steele, 799 F.2d at 466; file available administrative appeals, Taylor v. Appleton, 30 F.3d 1365, 1369 (11th Cir. 1994); McDonnell v. U.S., 4 F.3d 1227, 1240 (3d Cir. 1993); Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 63–64 (D.C. Cir. 1990); and present proof that he has exhausted all administrative remedies. Hedley v. U.S., 594 F.2d 1043, 1044 (5th Cir. 1979).

Under certain circumstances, a district court may waive the requirement to file an administrative appeal, such as "when . . . further administrative proceedings would prove futile," on the basis that this exhaustion requirement under the FOIA "is a prudential rather than jurisdictional consideration." Aguirre v. U.S. Nuclear Regul. Comm'n, 11 F.4th 719, 725 (9th Cir. 2021) (citing Yagman v. Pompeo, 868 F.3d 1075, 1083–84 (9th Cir. 2017)) (referring to

"constructive" exhaustion as "futility exception" to exhaustion); see also Antonelli v. Fed. Bureau of Prisons, 591 F. Supp. 2d 15, 25 (D.D.C. 2008) (holding a district court "need not dismiss a claim for failure to exhaust if it determines that the 'purposes and policies underlying the exhaustion requirement' would not be undermined by reaching the merits."). However, the Ninth Circuit recently joined other circuit courts in holding that, if an agency responds to a request before suit is filed, even if after the procedural deadline, a requestor must "actually" exhaust his administrative remedies under the FOIA. Aguirre, 11 F.4th at 726 (finding that, where requestor refused to respond to agency's request for more specific terminology in request and instead waited until the request was filled and then sued in federal court, he was required to actually exhaust his administrative remedies through the administrative appeal process) (collecting cases); see also Antonelli, 591 F. Supp. 2d at 25 ("to proceed on a claim where the agency has not had the opportunity to act would not only undercut the exhaustion requirement but would also encourage circumvention of the administrative process simply by filing a lawsuit.").

Furthermore, other exhaustion requirements cannot be waived. For example, "when a requestor fails to pay required fees, he fails to exhaust." Id. (citing Oglesby, 920 F.2d at 66 ("Exhaustion does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees."); Pollack v. Dept. of Just., 49 F.3d 115, 119–20 (4th. Cir. 1995), cert. denied, 516 U.S. 843 (1995) (characterizing the payment of fees as a "statutory obligation")); see also 5 U.S.C. §§ 552(a)(4)(A)(i)–(ii) (authorizing each agency to promulgate regulations specifying schedule of fees applicable to the processing of requests and establishing procedures and guidelines for determining when such fees should be waived or reduced, with requirement that fees be limited to "reasonable standard charges for document search and duplication"), 552(a)(4)(A)(v)–(vi) (agency may require advance payment of fees where requester has previously failed to pay fees in a timely fashion or the agency has determined the fee will exceed $250, or pursuant to statute for particular types of records). At bottom, whether "actually" or "constructively," a plaintiff must exhaust his administrative remedies before filing suit, and failure to do so operates as a jurisdictional bar to judicial review of a plaintiff's claims. See Aguirre, 11 F.4th at 728–29; Hyman v. Merit Sys. Prot. Bd., 799 F.2d 1421, 1423 (9th Cir.

1986).

### b. Requirement to Reasonably Describe Records Requested

Further, an agency's obligations under the FOIA to search for and release records "are not triggered … until it has received a proper FOIA request in compliance with [the agency's] published regulations." Antonelli, 591 F. Supp. 2d at 24, 26. A proper, perfected FOIA request is one that "reasonably describes" the records sought. 5 U.S.C. § 552(a)(3)(A). "Broad, sweeping requests lacking specificity are not permissible," nor are requests that would require the agency to "engage in quite a bit of guesswork to execute." Yagman, 868 F.3d at 1078, 1081 (holding request for "[r]ecords/information" on "the names and company/organization affiliations of any CIA employees, agents, operatives, contractors, mercenaries, and/or companies who are alleged to have engaged in torture of persons" specifically, the names and affiliations of those "as to whom President Obama stated that 'we tortured some folks' on August 1, 2014," was impermissibly broad and vague); Marks v. U.S., 578 F.2d 261, 263 (9th Cir. 1978) (an "all-encompassing search of the records of every field office of the FBI" would not "reasonably describe" the records sought); Mason v. Callaway, 554 F.2d 129 (4th Cir. 1977), cert. denied, 434 U.S. 877 (1977), reh. denied, 434 U.S. 935 (1977) (request for "all correspondence, documents, memoranda, tape recordings, notes, and any other material pertaining to the atrocities committed against plaintiffs … , including, but not limited to the files of [various government offices]" was not reasonably descriptive); Irons v. Schuyler, 465 F.2d 608 (1972), cert. denied, 409 U.S. 1076 (1972) (request for "all unpublished manuscript decisions of the Patent Office, together with such indices as are available …." was too broad); Fonda v. C.I.A., 434 F. Supp. 498 (D.D.C. 1977) (request for all documents filed under requestor's name or which "concern her" but do not mention her name was too broad). Thus, a party's failure to perfect a request also constitutes failure to exhaust administrative remedies, which precludes judicial review. Flowers v. IRS, 307 F. Supp. 2d 60, 67 (D.D.C. 2004); cf. Yagman, 868 F.3d at 1084 (failure to reasonably describe requested records was not "jurisdictional," but nevertheless required remand to agency to further confer with requestor and determine a reasonable request).

///

2. <u>Analysis</u>

Plaintiff seeks to assert FOIA claims against the IRS, GSA and SEC based on allegations that he submitted FOIA requests to these agencies and they either refused to respond or refused to comply with FOIA. (ECF No. 9 at 7.) However, the Court cannot concludes Plaintiff has alleged sufficient facts to either establish this Court has jurisdiction over his FOIA claims, or to state a cognizable FOIA claim.

**a.    Reasonably-Described FOIA Requests**

Plaintiff indicates the FOIA requests he sent to the IRS include requests for his entire "Individual Mater File and Business Master file," "Transcript Unabridged," along with "IRS FORM 5546 Activity Codes," and records for "Registered Security #104 803 4302,"[5] which arise from Plaintiff's "copyrighted (Common Law Copyright Notice #122380-NDC-2), Hold Harmless and Indemnity Agreement…." (ECF No. 9 at 15.)

Plaintiff indicates the FOIA request he sent to the GSA included requests such as the request to "search all SF24, SF25, SF25A, SF273, SF274 and SF275, OMB Control Number 9000-0045 Bonds that originated out of Kings, Fresno and Madera counties," as well as all such records that list Plaintiff's name on them. (<u>Id.</u> at 16.)

Plaintiff also alleges he made the following requests to the SEC, which he indicates were the same as the requests he sent to the IRS and GSA (<u>see id.</u> at 15):

> 1) Registered Security #104 803 4302 – when was it registered, by who, where is it currently held and located, all records responsive to it Underwriting Bonds as Principal.
>
> 2) Bond CUSIP # 315805382 – I requested ALL records responsive to this Bond … I want all Bond CUSIP numbers that Bond CUSIP #315 and/or Registered Security # 104 803 4302 have underwritten as PRINCIPAL ….
>
> 3) I believe the SF 24 Bid Bonds have the following Invitation Numbers: a) MCR034068, b) 09CM1205, c) 09CM2059, d) 09CM3557, e) H002612, f) OICM1278C, g) OICM1278, h) OICM2855, i) F035001672, j) 04CM3072, k) 923227
>
> 4) I believe the SF25 Performance Bonds used the above item #3 a) to k) as the performance contract numbers. Furthermore it may or

---

[5] Again, the Court notes Plaintiff's purported "Registered Security #104 803 4302" is actually the first ten numbers of Plaintiff's state birth certificate number, 104-80-343027. (<u>See</u> ECF No. 9 at 41.)

13

> may not use ONLY those numbers. I'm not exactly sure how these records are entered, stored and searched. There may be a prefix yet these numbers I believe ARE the Invitation and Contract numbers of PUBLIC WORKS 40 § U.S.C. 3131 Bonds. That used the Bond CUSIP # 315805382 and Registered Security #104 803 4302 as PRINCIPAL …
>
> 5) … search for any Bond, or Registered Security that has listed anywhere on it, either in PRINCIPAL, or Underwriter or Contract the above name, SSN, and Date of Birth.
>
> 6) records responsive to Bond CUSIP # 3163824 and #92206C300 ….

(Id. at 13–14.) As previously discussed at length, Plaintiff presents a sovereign citizen argument in which he suggests his criminal case/s and birth certificate are actually commercial and contractual in nature, creating the "Bond," Invitation," and "Contract" numbers that are the subjects of Plaintiff's FIOA requests. Even if such security instruments exist, however (and the allegations and attached documents indicate they do not), the Court finds Plaintiff's requests do not "reasonably describe" the records sought, 5 U.S.C. § 552(a)(3)(A), but instead constitute "[b]road, sweeping requests lacking specificity." Yagman, 868 F.3d at 1078, 1081; see also Cush-El v. State of Missouri, Inc., No. 4:22-cv-00656-RWS, 2022 WL 3444767, at *2–3, 5–6 (E.D. Mo. Aug. 17, 2022) (dismissing frivolous sovereign citizen prisoner complaint that relied on, among other things, FOIA requests for SEC documents related to an "account" which was actually the plaintiff's pending criminal case number); Arenas v. Revenue, No. 8:19-cv-00612-JLS-DFM, 2019 WL 7882559, at *1, 4 (C.D. Cal. Sept. 16, 2019) (dismissing for lack of subject matter jurisdiction claims arising from sovereign citizen-based allegations including improper tax collection and failure to respond/inadequate response to plaintiff's FOIA requests).

On this record, the Court concludes Plaintiff's overly-broad and confusing requests do not constitute a "proper FOIA" request, and did not trigger any obligation (or further obligation) under the FOIA to search for and release records. Accordingly, Plaintiff fails to allege facts sufficient to establish a claim under the FOIA.

**b.     Fee Payment**

As the Court explained, payment of fees is an exhaustion requirement. Antonelli, 591 F. Supp. 2d at 25; Oglesby, 920 F.2d at 66; Pollack, 49 F.3d at 119–20; 5 U.S.C. §§

14

552(a)(4)(A)(i)–(ii). Plaintiff does not allege he paid any FOIA fees. Nor does Plaintiff allege he appealed any denial of fee waiver. See Oglesby, 920 F.2d at 66. Instead, he alleges he wants the requested public records with fees waived. (ECF No. 9 at 8.) In support of this allegation, Plaintiff attaches a fully hand-written "fee waiver" letter he purportedly sent to each agency with his FOIA requests. (See ECF No. 9 at 44.) There is no indication that the "fee waiver" document Plaintiff created comports in any way with each agency's fee waiver application requirements. The letter also indicates that Plaintiff would "return the fee waiver [each agency] sent Me with a certified trust account statement for the past six months proving indigency that pursuant to the uniform schedule of the Director of management and budget … I qualify for a complete and full waiver of ALL FEES." (Id.) The allegations thus promise future performance. The letter does not indicate, nor does Plaintiff allege, that he submitted the actual fee waiver application to any agency. This does not comport with the exhaustion requirements identified by the aforementioned legal authorities. See Antonelli, 591 F. Supp. 2d at 25; Oglesby, 920 F.2d at 66; Pollack, 49 F.3d at 119–20; 5 U.S.C. §§ 552(a)(4)(A)(i)–(ii).

### c. Exhaustion of Administrative Remedies

Nor can the Court conclude Plaintiff met his burden to establish he "actually" exhausted his administrative remedies based on the allegations. Hedley, 594 F.2d at 1044. Notably, the exhibits attached to the complaint appear to contradict Plaintiff's allegations that he never received responses to his FOIA requests. Hal Roach Studios, Inc., 896 F.2d at 1555 n.19; Sprewell, 266 F.3d at 988.

The SEC sent Plaintiff a letter, which Plaintiff appends to the SAC, informing Plaintiff the "issue [he] raise[s] is not one over which the SEC has jurisdiction," and directing Plaintiff to consult an attorney. (ECF No. 9 at 20.) This letter suggests the agency did not understand Plaintiff's letter to constitute an FOIA request, or to be seeking documents.

The IRS also sent Plaintiff a letter, identified as a "final response to [Plaintiff's] Freedom of Information Act (FOIA) request dated March 31, 2022, received [by the IRS] on August 19, 2022." (Id. at 22.) The letter informs Plaintiff that the IRS does not maintain any records responsive to his requests, and suggesting this is because the security instruments identified by

Plaintiff do not exist. (Id. at 22–23.) Plaintiff does not allege facts showing he appealed either of these responses.

Finally, it is unclear whether Plaintiff corresponded with the GSA regarding his purported FOIA requests to that agency, as he alleges no facts about completing the administrative appeals process with respect to the FOIA request he purportedly sent to the GSA. Instead, Plaintiff attaches a letter response from nonparty Office of Government Information Services (OGIS), which appears to be in response to a prior correspondence from Plaintiff regarding FOIA requests. (See id. at 26–27.) The letter to Plaintiff, dated June 21, 2022, indicates OGIS was created to serve as the "Federal Freedom of Information Act (FOIA) Ombudsman," but that its jurisdiction was limited to assisting with the FOIA process, and not compelling agencies to release documents, enforcing the FOIA, *or serve as a substitute or replacement for the FOIA administrative appeals process*. (Id. at 26 (emphasis added).)

On this record, the Court finds Plaintiff did not sufficiently allege facts (much less submit adequate proof) to support a finding of exhaustion of his FOIA claims. Consequently, Plaintiff has not alleged facts sufficient to establish the Court has subject matter jurisdiction over his FOIA claims, nor has he alleged sufficient facts to state a cognizable claim under the FOIA.

### C. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," because "the court must remain guided by the underlying purpose of Rule 15 … to facilitate decisions on the merits, rather than on the pleadings or technicalities." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court," which may deny leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith. Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)); see also Gardner v. Martino, 563 F.3d 981, 990 (9th Cir. 2009) ("When a proposed amendment would be futile, there is no need to prolong the litigation by permitting further amendment."); Ecological

1  Rights Found. v. Pac. Gas & Elec. Co., 713 F.3d 502, 520 (9th Cir. 2013) (holding the court's discretion to deny leave to amend is "particularly broad" where the plaintiff has previously amended his complaint).

Here, the Court has given Plaintiff multiple opportunities to amend the complaint and cure the previously identified pleading deficiencies. He was provided the applicable legal standard for asserting an FOIA claim, and was repeatedly cautioned that sovereign citizen-based arguments would be deemed frivolous and that if he "[did] not take advantage of the opportunity to fix his complaint, [the Court] may convert the dismissal of the complaint into dismissal of the entire action." (ECF No. 6 at 7–11, 18–19; ECF No. 8 at 3–4, 7–9 (quoting Lira v. Herrera, 427 F.3d 1164, 1169 (9th Cir. 2005)).) Nevertheless, Plaintiff has persisted in asserting claims derived from various sovereign citizen theories which have been held to be "patently frivolous," Studley, 783 F.2d at 937 n.3, while failing to proffer simple, factual allegations to show entitlement to relief under an FOIA cause of action. Whether demonstrative of a refusal to properly amend the complaint to cure the identified deficiencies or an inability to do so, the Court finds that granting further leave to amend at this juncture would be futile. Gardner, 563 F.3d at 990; Ecological Rights Found., 713 F.3d at 520. Consequently, the SAC should be dismissed without further leave to amend.

## III.

## CONCLUSION AND RECOMMENDATION

As far as this Court can determine, Plaintiff's SAC is a frivolous sovereign citizen complaint. It is based on a theory that the named Defendants have violated the FOIA by failing to produce financial records of various over-broadly described security instruments that do not exist (as they were purportedly created as a consequence of Plaintiff's birth certificate, social security number, and criminal court case/s), and that allegedly demonstrate Plaintiff is owed nearly $34 million from the Government as a consequence of his incarceration as a free sovereign citizen. Based on the foregoing, the Court concludes that Plaintiff's second amended complaint is frivolous, and that, alternatively, Plaintiff has failed to state any claim upon which relief could be granted.

17

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's second amended complaint (ECF No. 9) be DISMISSED, without leave to amend, for lack of jurisdiction and as frivolous, as well as for failure to state a claim; and

2. The Clerk of the Court be directed to CLOSE this case.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, Plaintiff may file written objections to these findings and recommendations with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff must specifically identify the factual findings and legal conclusions in the recommendations to which the objection is made.  Plaintiff is further advised that frivolous, conclusive, or general objections to the recommendations will not be considered.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 9, 2023**

UNITED STATES MAGISTRATE JUDGE